## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

THE NORTH FACE APPAREL CORP.,
TBL LICENSING LLC,
KIPLING APPAREL CORP., and
JANSPORT APPAREL CORP.,

        Plaintiffs,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, The North Face Apparel Corp., TBL Licensing LLC, Kipling Apparel Corp., and Jansport Apparel Corp. (collectively "Plaintiffs"),[1] hereby sue Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, selling, offering for sale and distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks within this district through various Internet based e-commerce stores using the seller identification names set forth on Schedule "A" hereto (the "Seller IDs"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.    This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), and The All Writs Act, 28 U.S.C. § 1651(a).

---

[1] The Plaintiffs, The North Face Apparel Corp., TBL Licensing LLC, Kipling Apparel Corp., and Jansport Apparel Corp. are related ultimate subsidiaries of V.F. Corporation which is a global leader in branded lifestyle apparel, footwear and accessories.

Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they direct business activities towards and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least the Internet based e-commerce stores accessible in Florida and operating under their Seller IDs.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.      Plaintiff The North Face Apparel Corp. ("The North Face") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

5.      Plaintiff TBL Licensing LLC ("TBL") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 200 Domain Drive, Stratham, NH 03885.

6.      Plaintiff Kipling Apparel Corp. ("Kipling") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

7.     Plaintiff Jansport Apparel Corp. ("Jansport") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

8.     Goods bearing the Plaintiffs' registered trademarks set forth below are offered for sale and sold by their licensees which are related operating companies within the V.F. Corporation's family of companies, through various channels of trade within the State of Florida, including this district, and throughout the United States. Defendants, through the sale and offering for sale of counterfeit and infringing versions of goods using counterfeits of Plaintiffs' respective Marks, are directly, and unfairly, competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction.

9.     Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' names and associated trademarks and the destruction of the legitimate market sector in which they operate.

10.     In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars. The recent explosion of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as

Plaintiffs, to file a large number of lawsuits, against individuals and groups in order to protect both consumers and themselves from the ill effects of confusion and the erosion of the goodwill associated with Plaintiffs' respective brands.

## THE DEFENDANTS

11.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities towards consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace website eBay.com under the Seller IDs.

12.     Upon information and belief, Defendants use aliases in connection with the operation of their businesses, including but not limited to those identified by the same Defendant Number on Schedule "A."

13.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiffs' trademarks as described herein operating and using at least the Seller IDs.

14.     Upon information and belief, Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale and/or selling goods bearing and/or using counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names or seller identification aliases not yet known to

Plaintiffs. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

15.     Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs. Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce website where they sell during the registration or maintenance process related to their respective Seller IDs. Upon information and belief, Defendants have registered and maintained some of their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

16.     Upon information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and/or offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiffs' respective trademarks unless preliminarily and permanently enjoined.

17.     Defendants' Internet-based businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiffs and others.

18.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs.  Moreover, Defendants are using Plaintiffs' respective famous names and associated trademarks to drive

Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### The North Face's Trademark Rights

19.     The North Face is the owner of all rights, title, and interest in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "TNF Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| THE NORTH FACE | 0,983,624 | May 14, 1974 | USC 003 - Backpacks<br>USC 022 - Sleeping bags; tents, snowshoes, and skis<br>USC 039 - Camping clothing namely rainwear, parkas, vests, trousers, shoes, gloves and headgear |
|  | 1,030,071 | January 13, 1976 | IC 018 - Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Camping clothing, namely, rainwear, parkas, vests, trousers, shoes, gloves, headgear and snowshoes |
|  | 2,097,715 | September 16, 1997 | IC 018 - Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Clothing, namely, parkas, vests, jackets, anoraks, pants, ski bibs, gloves, mittens, underwear, hats, headbands, caps, ski suits, gaiters, shorts, and shirts |

| | | | IC 009 - Computer bags |
|---|---|---|---|
|  | 3,538,773 | November 25, 2008 | IC 009 - Computer bags<br>IC 018 - All purpose sporting bags, backpacks, day packs, knapsacks, rucksacks, book bags, tote bags, handbags, duffel bags, knap sacks and duffel sacks, messenger bags, hip and lumbar packs, hip belts, shoulder bags, messenger bags, book bags, waist packs, fanny packs, day packs, shoulder bags, satchels, mountaineering bags, boston bags, internal frame packs and external frame packs, backpack bottle pockets, rain covers used to cover the aforesaid; hydration packs, namely, backpack hydration systems consisting of a backpack, a reservoir, and a mouthpiece connected to the reservoir by a tube; backpack shoulder harnesses; parts and fittings for all the aforesaid goods<br>IC 020 - Sleeping bags; covers for sleeping bags; sleeping bag pads; sleeping bag liners; sacks for carrying and storing sleeping bags; non-metal tent poles and tent stakes<br>IC 021 - Hydration packs, namely, hydration system consisting of a reservoir and a mouthpiece connected to the reservoir by a tube<br>IC 022 - Tents; tent accessories, namely, tent storage bags, rain flies, vinyl ground cloths, tent pole storage sacks, and gear loft platforms used for storage<br>IC 025 - Clothing, namely, men's, women's, and children's t-shirts, shirts, tops, sweatshirts, sweatpants, pants, side zip pants, shorts, trousers, jeans, vests, parkas, anoraks, coats, jackets, wind-resistant jackets, jacket hoods, pullovers, sweaters, coveralls, underwear, thermal underwear, |

| | | | |
|---|---|---|---|
| | | | socks, tights, gloves, mittens; outerwear, namely, shells, one-piece shell suits, ski wear, ski suits, ski vests, ski jackets, ski bibs, bib overalls, bib pants, snowboard wear, snow pants, snow suits, rain wear, rain jackets, rain pants, gaiters, namely, neck gaiters, leg gaiters and ankle gaiters; skirts, skorts, dresses, swim trunks; footwear, namely, athletic shoes, sneakers, trail running shoes, climbing shoes, hiking shoes, slippers, climbing slippers, boots, trekking boots, hiking boots, snowshoes, clogs, sandals; headgear, namely, caps, hats, headbands, bandanas, scarves, earbands, earmuffs, balaclavas, visors, beanies; belts<br>IC 035 - On-line retail store services, retail store services, mail order, catalogue and distributorship services, all featuring camping and outdoor gear and equipment, books, food, hardware, clothing, sportswear, eyewear, footwear, headgear, sports equipment and related accessories |
| THE NORTH FACE | 3,630,846 | June 2, 2009 | IC 025 - Footwear; head wear; rainwear; scarves; ski wear; socks |
| | 3,630,850 | June 2, 2009 | IC 025 - Footwear; gloves; headgear, namely, hats, caps, headbands, visors, ear muffs; hosiery, namely long underwear; jackets; mittens; pants; parkas; shirts; shorts; ski jackets; skirts; socks; tights; vests |

The TNF Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the TNF Marks are attached hereto as Composite Exhibit "1."

20.     The TNF Marks have been used in interstate commerce to identify and distinguish high quality goods for an extended period of time and serve as symbols of The North Face's quality, reputation and goodwill.

21.     Further, The North Face and its related companies have expended substantial time, money and other resources developing, advertising and otherwise promoting the TNF Marks. The TNF Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

22.     The North Face and its related companies have extensively used, advertised and promoted the TNF Marks in the United States in connection with the sale of high quality goods. As a result, the TNF Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as identifiers of high quality goods.

23.     The North Face has carefully monitored and policed the use of the TNF Marks and has never assigned or licensed the TNF Marks to any Defendant in this matter.

24.     Genuine goods bearing and/or using the TNF Marks are widely legitimately advertised and promoted by The North Face, its related companies, authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to The North Face's overall marketing and consumer education efforts. Thus, The North Face, its related companies, and authorized distributors expend significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow The North Face, its related companies, and authorized distributors to

fairly and legitimately educate consumers about the value associated with the TNF Marks and the goods sold thereunder.

**TBL's Trademark Rights**

25.     TBL is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "TBL Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 1,075,061 | October 11, 1977 | IC 025 - Footwear, namely boots, work shoes, and hiking shoes |
|  | 1,502,205 | August 30, 1988 | IC 018 - Leather goods, namely, credit card cases, wallets, duffle bags, backpacks and briefcases |
| **Timberland** | 1,523,598 | February 7, 1989 | IC 025 - Clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, caps, hats, gloves, scarfs, belts, t-shirts and vests |
|  | 1,552,963 | August 22, 1989 | IC 025 - Clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, caps, hats, gloves, scarfs, belts, t-shirts and vests |
| TIMBERLAND | 2,932,268 | March 15, 2005 | IC 025 - Footwear; clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, shorts, headwear, gloves, neckwear, belts, sweatshirts, t-shirts, vests, socks |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 2,947,228 | May 10, 2005 | IC 025 - Footwear; clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, shorts, headwear, gloves, neckwear, belts, sweatshirts, t-shirts, vests, socks |

The TBL Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the TBL Marks are attached hereto as Composite Exhibit "2."

26.     The TBL Marks have been used in interstate commerce to identify and distinguish high quality goods for an extended period of time and serve as symbols of TBL's quality, reputation and goodwill.

27.     Further, TBL and its related companies have expended substantial time, money and other resources developing, advertising and otherwise promoting the TBL Marks. The TBL Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

28.     TBL and its related companies have extensively used, advertised and promoted the TBL Marks in the United States in connection with the sale of high quality goods. As a result, the TBL Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as identifiers of high quality goods.

29.     TBL has carefully monitored and policed the use of the TBL Marks and has never assigned or licensed the TBL Marks to any Defendant in this matter.

30.     Genuine goods bearing and/or using the TBL Marks are widely legitimately advertised and promoted by TBL, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google,

Yahoo!, and Bing has become increasingly important to TBL's overall marketing and consumer education efforts. Thus, TBL expends significant monetary resources on Internet marketing and consumer education, including SEO strategies. Those strategies allow TBL and its related companies to fairly and legitimately educate consumers about the value associated with the TBL Marks and the goods sold thereunder.

### Kipling's Trademark Rights

31.     Kipling is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "KIPLING Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 1,889,891 | April 18, 1995 | IC 018 - traveling bags; handbags; schoolbags; all purpose sport bags; cosmetic bags sold empty; vanity cases sold empty; suitcases; carrying cases for books, stationery, clothing and shoes; rucksacks; backpacks; waist packs; bags for board games and card games; key cases; pocket wallets and purses |
|  | 1,952,994 | January 30, 1996 | IC 018 - traveling trunks and traveling bags, handbags, school bags, athletic sport bags, make-up bags sold empty, toilet cases sold empty, suitcases, attache cases, book bags, rucksacks, backpacks, waist packs, key cases, pocket wallets, purses, and umbrellas |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| KIPLING | 2,945,417 | May 3, 2005 | IC 018 - travel cases; suitcases; school bags; bags, namely, all purpose sport bags, bags for campers, bags for climbers, cosmetic bags sold empty, duffel bags, clutch bags, handbags, travel bags; backpacks |
|  | 4,708,411 | March 24, 2015 | IC 016 - Passport cases; Pen or pencil holders |
|  | 4,708,413 | March 24, 2015 | IC 006 - Metal locks for luggage IC 016 - Passport cases; Pen or pencil holders IC 024 - Towels |
| KIPLING | 4,816,387 | September 22, 2015 | IC 006 - Metal locks for luggage IC 016 - Passport cases; Pen or pencil holders IC 024 - Towels |
|  | 5,436,935 | April 3, 2018 | IC 021 - Lunch bags not of paper |
|  | 5,447,062 | April 17, 2018 | IC 021 - Lunch bags not of paper |

The KIPLING Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the KIPLING Marks are attached hereto as Composite Exhibit "3."

32.    The KIPLING Marks have been used in interstate commerce to identify and distinguish high quality goods for an extended period of time and serve as symbols of Kipling's quality, reputation and goodwill.

13

33.     Further, Kipling and its related companies have expended substantial time, money and other resources developing, advertising and otherwise promoting the KIPLING Marks. The KIPLING Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

34.     Kipling and its related companies have extensively used, advertised and promoted the KIPLING Marks in the United States in connection with the sale of high quality goods. As a result, the KIPLING Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as identifiers of high quality goods.

35.     Kipling has carefully monitored and policed the use of the KIPLING Marks and has never assigned or licensed the KIPLING Marks to any Defendant in this matter.

36.     Genuine goods bearing and/or using the KIPLING Marks are widely legitimately advertised and promoted by Kipling, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Kipling's overall marketing and consumer education efforts. Thus, Kipling expends significant monetary resources on Internet marketing and consumer education, including SEO strategies. Those strategies allow Kipling and its related companies to fairly and legitimately educate consumers about the value associated with the KIPLING Marks and the goods sold thereunder.

### Jansport's Trademark Rights

37.     Jansport is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "JANSPORT Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| JANSPORT | 1,089,701 | April 18, 1978 | IC 018 - Backpacks, pack frames, pack bags, rucksacks, stuff bags and related accessories-namely, straps, pads and belts<br>IC 025 - Clothing-namely, jackets |
| JANSPORT | 2,997,678 | September 20, 2005 | IC 018 - All purpose sporting bags, all purpose carrying bags, soft luggage, backpacks, daypacks, fanny packs, frame backpacks, knapsacks, book bags for traveling, tote bags, duffel bags, handbags, garment bags for traveling, clothing bags for traveling<br>IC 025 - skirts, t-shirts, jerseys, hooded shirts, pants, sports jackets, gymnastic shorts, gymnastic pants and gymnastic shirts; warm-up suits, warm-up pants and warm-up jackets; sweatshirts, sweatpants |
| JANSPORT | 3,316,763 | October 23, 2007 | IC 018 - All purpose sporting bags, all purpose carrying bags, soft luggage, luggage cases, backpacks, daypacks, fanny packs, frame backpacks, knapsacks, Book bags for traveling, tote bags, duffel bags, handbags, garment bags for traveling, clothing bags for traveling |
| JANSPORT | 5,251,347 | July 25, 2017 | IC 009 - Backpacks specially adapted to carry laptops, notebook computers and tablets<br>IC 018 - Backpacks, daypacks, duffle bags; toiletry bags sold empty |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 5,447,005 | April 17, 2018 | IC 009 - Backpacks and wheeled backpacks especially adapted to hold laptops; laptop sleeves; briefcases especially adapted for holding laptop computers; tablet computer sleeves; messenger bags, shoulder bags, and slings, all especially adapted for holding laptops and tablet computers; protective covers and cases for tablet computers; wheeled backpacks and wheeled briefcases especially adapted for holding laptops and tablet computers; tote bags especially adapted for holding laptops and tablet computers; Pouches especially adapted for holding electronic accessories, namely, USB cables, earbuds, USB portable chargers IC 018 - Backpacks, all purpose sporting bags, all purpose carrying bags, soft luggage, daypacks, fanny packs, frame backpacks, knapsacks, tote bags, duffel bags, handbags, weekend bags, drawstring pouches, drawstring bags, messenger bags, toiletry bags sold empty |

The JANSPORT Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the JANSPORT Marks are attached hereto as Composite Exhibit "4."

38.    The JANSPORT Marks have been used in interstate commerce to identify and distinguish high quality goods for an extended period of time and serve as symbols of Jansport's quality, reputation and goodwill.

39.     Further, Jansport and its related companies have expended substantial time, money and other resources developing, advertising and otherwise promoting the JANSPORT Marks. The JANSPORT Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

40.     Jansport and its related companies have extensively used, advertised and promoted the JANSPORT Marks in the United States in connection with the sale of high quality goods. As a result, the JANSPORT Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as identifiers of high quality goods.

41.     Jansport has carefully monitored and policed the use of the JANSPORT Marks and has never assigned or licensed the JANSPORT Marks to any Defendant in this matter.

42.     Genuine goods bearing and/or using the JANSPORT Marks are widely legitimately advertised and promoted by Jansport, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Jansport's overall marketing and consumer education efforts. Thus, Jansport expends significant monetary resources on Internet marketing and consumer education, including SEO strategies. Those strategies allow Jansport and its related companies to fairly and legitimately educate consumers about the value associated with the JANSPORT Marks and the goods sold thereunder.

**Defendants' Infringing Activities**

43.     Upon information and belief, Defendants are promoting and advertising, distributing, selling and/or offering for sale goods in interstate commerce bearing and/or using counterfeit and infringing trademarks that are exact copies of the TNF Marks, the TBL Marks,

the KIPLING Marks, and/or the JANSPORT Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs. Specifically, upon information and belief, Defendants are using identical copies of one or more of the TNF Marks, TBL Marks, KIPLING Marks, and/or JANSPORT Marks (collectively, "Plaintiffs' Marks") for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' goods.

44.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks.  The net effect of Defendants' actions will cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Plaintiffs.

45.     Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on, at least, one Internet marketplace website using, at least, the Seller IDs. In so advertising these goods, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

46.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, paid advertising and marketing strategies based, in large measure, upon an illegal use of

counterfeits and infringements of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of one or more of Plaintiffs' famous names or Plaintiffs' Marks in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, and (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

47.     Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

48.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

49.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale and/or offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

50.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

51.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective genuine goods and Defendants' Counterfeit Goods, which there is not.

52.     Upon information and belief, Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

53.     Further, upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

54.     Plaintiffs have no adequate remedy at law.

55.     Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiffs' Marks. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and

permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

56.     The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

57.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

58.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and/or sale of the Counterfeit Goods.

59.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing products bearing and/or using counterfeits and/or infringements of one or more of Plaintiffs' Marks. Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing goods bearing and/or using Plaintiffs' Marks.

60.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

61.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

62.     Defendants' above-described illegal actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

64.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

65.     Upon information and belief, Defendants' Counterfeit Goods using, offered for sale, and sold under copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

66.     Defendants' Counterfeit Goods using, offered for sale, and sold under copies of one or more of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective, genuine goods.  However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

67.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into

commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

68.     Defendants have authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

69.     Additionally, Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks in order to unfairly compete with Plaintiffs and others for space within search engine organic results, thereby jointly depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web.

70.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

71.     Plaintiffs have no adequate remedy at law, and have each sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and each Plaintiff will continue to suffer irreparable injury to their respective goodwill and business reputations, as well as monetary damages.

### <u>COUNT III - COMMON LAW UNFAIR COMPETITION</u>

72.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

73.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks that are virtually

identical, both visually and phonetically, to Plaintiffs' Marks in violation of Florida's common law of unfair competition.

74.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of Plaintiffs' Marks. Defendants are also using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

75.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of Plaintiffs' Marks.

76.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

### COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

77.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

78.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of Plaintiffs' Marks.  Plaintiffs are the owners of all common law rights in and to Plaintiffs' Marks.

79.     Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of Plaintiffs' Marks.

80.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using Plaintiffs' Marks.

81.     Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

## **PRAYER FOR RELIEF**

82.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the

publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' respective name or trademarks; and from otherwise unfairly competing with Plaintiffs.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, enjoining Defendants and all third parties with actual notice of the injunction from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of Plaintiffs' Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, requiring the Seller IDs, and any other alias seller identification names being used or controlled by Defendants to engage in the business of marketing, offering to sell and/or selling goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks be disabled by each Defendant and the applicable governing Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including at least eBay, Inc.

d.      Entry of an order that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to eBay, Inc., identify any e-mail address known to be associated with Defendants' respective Seller IDs, and immediately cease facilitating access to any or all e-

commerce stores through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing counterfeits and/or infringements of Plaintiffs' Marks.

    e. Entry of an order that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to eBay, Inc., permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiffs' request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks associated with or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of Plaintiffs' Marks.

    f. Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election with respect to Count I, that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

    g. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

    h. Entry of an order that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal, Inc., and their related companies and

affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

        i.      Entry of an award of pre-judgment interest on the judgment amount.

        j.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: April 22, 2019.      Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: stephen@smgpa.net
E-mail: leo@smgpa.net
E-mail: raquel@smgpa.net

Attorneys for PLAINTIFFS

**SCHEDULE "A"**

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**